IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

     vs.                                             CRIMINAL NO. 15-3224 WJ

SANDRA COOK,

       Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION IN LIMINE NO. 1
REGARDING DEFENDANT'S ALLEGED TRAVEL TO MEXICO**

THIS MATTER comes before the Court upon Defendant's Motion in Limine No. 1, filed February 23, 2017 **(Doc. 64)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion lacks merit and, accordingly, is denied.

BACKGROUND

The September 10, 2015 indictment in this case charges Defendant Sandra Cook with a single charge of Possession with Intent to Distribute 500 grams and more of methamphetamine in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(A). On February 28, 2017, Defendant was charged by superseding grand jury indictment with two violations of 21 U.S.C. §§841(a)(1) and (b)(1)(A) on June 30, 2015 and February 24, 2016 (see Doc. 75). The June 2015 charge relates to methamphetamine recovered during the execution of a search warrant on 2732 Alcazar St. NE in Albuquerque where both Jeffrey Burlingame and Defendant were present. The February 2016 charge relates to methamphetamine recovered during the execution of a search warrant on 10819 Habanero Way in Albuquerque where both Burlingame and Defendant were present.

*June 2015 Search Warrant:*

The Court previously denied Defendant's Motion to Exclude Purported Statements for Miranda Violations (Doc. 61). These statements were included in a report made by Detective Koppman following the execution of the search warrant on June 30, 2015. That report states that Defendant initially denied ownership of the methamphetamine and mushrooms found in the upstairs bedroom of the Alcazar residence, but then she admitted to Det. Koppman that the drugs "did in fact belong to her, that her suppliers are from the Sinaloa Cartel and that Marti [Solano] is her main customer." Doc. 61 at 9. Marti, who was at the Alcazar residence on June 30, 2015, indicated to agents that Defendant brought methamphetamine from Arizona. Doc. 61 at 9. The Court found Det. Koppman's testimony and the statements made in his report to be credible. *Id*. at 10.

*February 2016 Search Warrant*

Prior to the execution of the February 2016 search warrant, Burlingame was observed entering the Habanero Way location and his previous presence with Defendant was a part of the basis for the agents' belief that Defendant was also present at that location. After the execution of the February 2016 warrant (during which Burlingame was present), agents found approximately 441.6 grams of pure methamphetamine stored in a black and yellow Dewalt tool bag. They also found Defendant's driver's license and two driver's licenses for Lara Baca, a social security card for Lara Baca and a birth certificate for Lara Baca. *See* Doc. 83-4.

**DISCUSSION**

Defendant seeks to preclude the introduction of evidence at trial of Defendant's alleged travel to Mexico after her arrest in the present matter because it is not relevant to the charge in

this case under Fed.R.Evid. 401 and any such minimal relevance of this evidence is far outweighed by the danger of unfair prejudice and confusion.[1]

According to the Government's written reports, an individual named Lara Baca crossed from Mexico into the Unites States as a pedestrian at the Nogales, Arizona Port of Entry ("POE") on August 20, 2015, accompanied by another individual named Jeffrey Burlingame. While there is no record of Sandra Cook crossing the POE on that date, Homeland Security Investigations ("HSI") Special Agent ("SA") Brett Finn was able to visually identify Defendant as the individual crossing with Burlingame at that time by comparing a booking photo of Defendant with the individual captured at the Nogales POE. Video footage of the border crossing taken by U.S. Customs and Border Protection ("CBP") shows both Defendant and Burlingame walking together in the same POE line and walking through a waiting area at the border on the same date and time that Lara Baca and Burlingame crossed over from Mexico into the United States. Defendant is holding a single sheet of paper in her hand which appears to be a certificate of some kind, and which is believed to be Baca's birth certificate. The Government believes that Defendant impersonated Baca by using the latter's birth certificate to enter the United States and contends that Defendant's travel to Mexico is relevant to prove the means by which she was able to traffic large amounts of methamphetamine and makes it more probable that she would therefore have the connections necessary to possess almost 3 kilograms of methamphetamine.

The Court agrees with the Government that Defendant's travel to Mexico is relevant to the charges brought against her in this case under Fed.R.Evid. 401 and 402. Defendant's travel to Mexico corroborates her own admission that she is supplied by the Sinaloa Cartel, which is a

---

[1] The Court assumes that Defendant was initially arrested on state charges prior to her indictment by federal grand jury, as she has been in custody since her arrest on the federal charges. See Docket entry for 2/24/2016 & Doc. 6 (Clerk's Min.).

Case 1:15-cr-03224-WJ   Document 96   Filed 03/21/17   Page 4 of 5

drug trafficking organization based in Mexico. Doc. 83-2. Both Burlingame and Defendant were present during the execution of both warrants (of July 30, 2015 and February 24, 2016), and so Defendant's travel with Burlingame is relevant to demonstrate their relationship. There is also a critical connection between Lara Baca's birth certificate found at the Habanero Way residence and Defendant's use of that birth certificate to cross the border. The video the Government seeks to admit explains why Baca's identification would be in Defendant's possession and why it was present with the methamphetamine found at Habanero Way, since Defendant was not found with the Dewalt bag in her hands at the time the search warrant was executed at Habanero Way.[2]

The only other question is whether the probative value of this evidence is substantially outweighed by a danger of unfair prejudice or confusion to the jury under Fed.R.Evid. 403, and the Court finds that evidence of Defendant's travel from Mexico to Arizona passes the rule's balancing test. The facts surrounding the August 2015 crossing (except for the use of false documents to cross into the United States) are innocent without proper context. These facts are of consequence in this case and are directly tied to the two pending charges, and it is only in context of the surrounding facts that the specific actions of Defendant take on potentially prejudicial meaning. While this evidence may be prejudicial to Defendant, Rule 403 excludes relevant evidence that is *unfairly* prejudicial. *See U.S. v. Flanagan,* 34 F.3d 949, 953 (10th Cir. 1994) (the unfair prejudice aspect of Rule 403 "cannot be equated with testimony which is simply unfavorable to a party. It must be unfair in the sense that it would be misleading and not aid and assist the jury in making a material determination in the case."). Evidence of Defendant's alleged travel to Mexico after her arrest in this matter (in the form of the video or

---

[2] Defendant seeks to preclude "any testimony or other evidence" about alleged travel to Mexico. Doc. 64 at 2. The Government argues that evidence of this travel is relevant and probative without specifying whether it intends on introducing either testimony or video, or both.

4

testimony) is necessary to allow a jury to "connect the dots" between Defendant's use of Baca's documents to cross the border and her exercise of control over the Dewalt bag found at the Habanero Way residence—which is where Baca's identification documents were also found. For these reasons, Defendant's motion is DENIED.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE