IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

SANDRA COOK,                                                                    No. 15-cr-3224 WJ

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S EMERGENCY MOTION FOR RELEASE BOND**

THIS MATTER comes before the Court upon Defendant's Emergency Motion for Release Bond and for Compassionate Release, filed April 18, 2022 **(Doc. 195)**.[1] Having reviewed the parties' submissions and the applicable law, the Court finds that Defendant's motion is not well-taken. Accordingly, the motion is DENIED.

## BACKGROUND

Sandra Cook was tried and convicted for two violations of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Count 1 relates to the June 30, 2015 search of her residence located at 2732 Alcazar Street in Albuquerque, New Mexico ("Alcazar Search"), and Count 2 relates to the June 30, 2015 search of her residence at 10819 Habanero Way in Albuquerque, New Mexico ("Habanero Search"). She was sentenced to 324 months of incarceration. The Tenth Circuit Court of Appeals affirmed her trial conviction (*see* Doc. 165-1, Mandate), and now Defendant applies for release pending the resolution of her pending Motion to Vacate under 28 U.S.C. §2255 (Doc. 192) or for

---

[1] On April 18, 2022, Defendant also filed a Supplemental Information for Emergency Motion for Release Bond, which refers to release pursuant to Compassionate Release. Doc. 196 at 2. The Court thus liberally construes the *pro se* motion as one seeking both forms of relief.

compassionate release under 18 U.S.C. §3582(c). Defendant seeks release in order to be the sole caretaker of her aging mother, Carolyn, who is suffering from dementia.

I.  **Release Pending Habeas Relief Is Not Available**

While no Constitutional or statutory right exists, Federal courts have the inherent power to release a state prisoner on bond, pending hearing and decision on a petition for habeas relief. *See Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981). While this power exists, it should be exercised sparingly. *United States v. Hardesty*, No. 96-3510, 1997 WL 749408, at *1 (D. Kan. Nov. 20, 1997); *see also Schlup v. Delo*, 513 U.S. 290, 326 n.42 (1995) (habeas petitioner "comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt"); *Datson v. Clark,* 900 F.2d 77, 789 (6th Cir. 1990) ("as a practical matter, the motions for bail will be denied in most of the habeas proceedings," because "[t]here will be few occasions where a prisoner will meet this standard"); *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985) (the case for bail pending resolution of postconviction proceeding is even weaker than the case for bail pending appeal).

The Tenth Circuit has established a two-part standard for evaluating whether an inmate may be released pending the resolution of the inmate's habeas petition. "An inmate seeking federal habeas relief must, in order to obtain release pending a determination on the merits of his petition, make a showing of exceptional circumstances or demonstrate a clear case on the merits of his habeas petition." *United States v. Palermo*, 191 F.App'x 812, 813 (unpublished) (10th Cir. 2006) (citing *Pfaff*, 648 F.2d at 693). The Tenth Circuit has held that exceptional or "special circumstances include the raising of substantial claims upon which appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal

process." *Barnett v. Hargett*, 166 F.3d 1220, at *1 (10th Cir. 1999) (table decision) (citing *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989)).

Unfortunately, Defendant's concern for her mother's health and well-being is not included among the "special circumstances" necessary to consider release pending habeas relief. As the Government observes, Ms. Cook did not address the strength of the merits in her habeas petition. However, for the first time in her reply, Defendant offers several arguments from her habeas petition based on ineffective assistance of counsel in failing to investigate certain evidence. For example, Ms. Cook claims that the photographs taken of her driver's license and social security card and which were used as evidence at trial, were taken 14 minutes apart even though both items were found in the same drawer. Defendant contends that these items were used to establish the room in which these documents were found as hers, but that the time sequence in the photos somehow undermines their integrity. *See* Doc. 203 at 6.

Defendant also contends that metadata from other photographs admitted at trial were allegedly removed which suggests that the photos could have been altered. She claims that as part of her §2255 petition, she had those photographs downloaded from the federal courts PACER ("Public Access to Court Electronic Records") system and claims that she ran these photographs through metadata software by the Yale student who analyzed the photographs for trial purposes. *See* Doc. 203 at 4, 8. However, the only exhibits included with the motion here are the ones used by the Government at Defendant's trial. *See* Doc. 203 at 10-16 (referring to Govt's Exs. 10, 11 & 18).

The Court must strictly enforce the "exceptional circumstances" limitations to avoid opening the floodgates for requests for release regardless of the intrinsic merits of a habeas motion. *United States v. Dansker*, 561 F.2d 485, 487 (2d Cir. 1977) ("[a]llowing bail freely on appeals

from collateral attacks would encourage such litigation regardless of its intrinsic merit"). Here, Ms. Cook contends that the timing of photographs and the absence of metadata from photographs (using the Government's own exhibits) undermines the strength of the evidence used against her at trial. Defendant offers no basis from which the Court can conclude that she has a clear case on the merits for her habeas petition. Defendant's request for release on this basis is therefore denied.

II.     **Request for Compassionate Release Not Justified**

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, a court may modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction, that a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and that the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Haynes*, 827 F. App'x 892, 895 (10th Cir. 2020). The Sentencing Commission has recognized four categories of "extraordinary and compelling reasons": the defendant's medical condition, the defendant's age, the defendant's family circumstances, and a catch-all, "other reasons." U.S.S.G. § 1B1.13 cmt. n.1; *see United States v. Gieswein*, 832 F. App'x 576, 577 (10th Cir. 2021).

A.      Exhaustion

A district court may grant a defendant's own motion for sentence reduction only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have

passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). To effectively exhaust, a prisoner must make an initial request for compassionate release under § 28 C.F.R. 571.61, and then must appeal a denial pursuant to § 571.63(a). *See id.*; *see also* § 28 C.F.R. 571.60-.64. Only a denial by the BOP Director is considered a "final administrative decision." § 571.63(c).

Defendant claims she has effectively exhausted her administrative rights to appeal because she emailed the prison facility social worker and requested compassionate release to be a caregiver for her mother. Doc. 195 at 5 (copy of email). However, a request to a social worker for compassionate release does not satisfy the administrative exhaustion requirement, which this Court finds is jurisdictional. *See United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement); *United States v. Saldana*, 807 F. App'x 816, 820 (Mar. 26, 2020 - 10th Cir. 2020) (stating that § 3582(c) is a jurisdictional statute).

While the Court's finding that Defendant failed to exhaust her administrative rights to appeal is sufficient in and of itself to deny Defendant's motion, , the Court will assume here that exhaustion is satisfied in order to show that Defendant's compassionate release request fails on other grounds as well.

B. <u>Extraordinary and Compelling Reasons</u>

In order to grant a defendant's compassionate release motion, the Court must first engage in a three step process under § 3582(c)(1)(A), whereby the Court (1) finds that extraordinary and compelling reasons warrant a sentence reduction; (2) finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) considers the factors set forth in § 3553(a), to the extent that they are applicable. *See United States v. Maumau*, 993

5

F.3d 821, 831 (10th Cir. 2021) (*quoting United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (explaining that "because this three-step test is consistent with the plain language of the statute, we adopt the test for use in this circuit"). The Court acknowledges that it is no longer bound by the BOP policy statement, USSG § 1B1.13, cmt. n.1, under *Maumau*, 993 F.3d at 832, but the Court has historically regarded the policy statement as an appropriate model upon which to base compassionate release cases. All three steps must be satisfied when a court orders compassionate release, but in instances in which the court denies a motion, it does not need to address all three steps. *McGee*, 2021 WL 1168980 at *6 (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).

The Sentencing Commission has recognized four categories of "extraordinary and compelling reasons": the defendant's medical condition, the defendant's age, the defendant's family circumstances, and a catch-all, "other reasons." U.S.S.G. § 1B1.13 cmt. n.1; *see United States v. Gieswein*, 832 F. App'x 576, 577 (10th Cir. 2021). The moving defendant bears the burden of establishing that compassionate release is warranted. *See, e.g., United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (defendant bears burden to show reduction is warranted under Section 3582(c)(2)); *United States v. Bright*, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) ("extraordinary and compelling" standard imposes a heavy burden on a defendant seeking relief under Section 3582(c)(1)(A)).

Here, Ms. Cook seeks release to be able to provide care for her mother Carolyn. In her motion, she explains that her mother's rent has not been paid and that her mother has been "wandering to the apartment complex office and requiring assistance to get home." Doc. 196 at 1. She also states that her brother, who had been assuming the role of caregiver for her mother, was

6

in the hospital after suffering a heart attack and was on dialysis and was not expected to survive. Doc. 195 at 2.  In her reply, Ms. Cook provides additional information indicating that the situation has deteriorated since she filed her motion: (1) Carolyn Cook has been moved to an assisted living facility in Albuquerque, New Mexico (Doc. 203 at 3) and (2) her brother is now deceased (Doc. 203 at 4) ("her son [referring to Carolyn's son] is now deceased waiting in limbo at the hospital for further instructions on what to do with the body").

The BOP policy statement regarding family circumstances recognizes two family situations that may present extraordinary and compelling reasons for compassionate release: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," and (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). A request for release to care for an aging and ailing parent does not constitute a circumstance warranting compassionate release under applicable BOP policy. *United States v. Hassen*, No. 07-20099-04-JWL, 2020 WL 6680387, at *3 (D. Kan. Nov. 12, 2020).  The Court finds no reason either to diverge from that policy or to grant Defendant's request under the "catch-all" category.  The "vast majority of courts examining a defendant's family circumstances for purposes of compassionate release have held that providing care to elderly parents, even ailing parents, simply does not fall within the reasons contemplated by the policy statement." *United States v. Hassen*, No. 07-20099-04-JWL, 2020 WL 6680387, at *3 (D. Kan. Nov. 12, 2020) (collecting cases).

Defendant contends that she "needs to take of her mother."  Doc. 203 at 3.  However, an alternative to her release in providing care for her mother has already been found –placement in the assisted living facility where her Carolyn now resides.  Based on Ms. Cook's own statements,

7

Adult Protective Services ("APS") has become involved in addressing Carolyn Cook's situation, suggesting that Medicare is now part of the care plan because no family member was available to step in to care for Carolyn. Her placement in West Ridge Assisted Living in Albuquerque, New Mexico also indicates that she will be taken care of, regardless of whether Defendant is released. Consequently, there are no extraordinary or compelling reasons to grant Defendant relief under §3582.

Defendant contends that Mr. Ronny Diaz, who appears to be an APS staff member, "recommended" that Carolyn "be in the care of her daughter Defendant Cook and not just a furlough visit as suggested." Doc. 203 at 2. Mr. Diaz' recommendation is not surprising but it is not dispositive here. To be sure, family caregiving of some kind and to some degree is always preferable to the care provided in facilities by health care workers who are capable but are essentially strangers. Understandably, Mr. Diaz is thinking of what may be best for someone like Carolyn Cook but unfortunately, what is best for an aging parent is not always possible and it is not part of the inquiry here. Further, granting compassionate release as a matter of general policy to care for aging parents contravenes the very purpose of §3582(c) which is to offer that relief as an exception rather than what would most certainly become the rule. *See, e.g., United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

The Court may deny Defendant's motion by finding there are no extraordinary and compelling circumstances, but proceeds to the final part of the analysis to demonstrate that Ms. Cook's motion would fail under any part of the inquiry.

    C.    <u>Factors Under 18 U.S.C. §3553(a)</u>

8

To justify the type of compassionate release that Defendant seeks, the Court must determine that "the [D]efendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; USSG § 1B1.13. The Court must also consider the factors set forth in 18 U.S.C. § 3553(a) which includes the nature and circumstances of the offense and the history and characteristics of the defendant as well as the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from further crimes of the defendant.

The "concept of safety of the community under § 3142(e) is not limited to the danger of physical violence, but rather refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Boy*, 322 Fed. Appx. 598, 600 (10th Cir. 2009) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (citing the Comprehensive Crime Control Act of 1984, Senate Report No. 98-225, where the Senate Committee on the Judiciary emphasized that "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'"); *see also United States v. Gilliard*, 722 Fed. App' x. 818, 821 (10th Cir. 2018) (unpublished).

The Government opposes Ms. Cook's release based on her history which is "replete with crimes of dishonesty, drug crimes, and failures to comply." Doc. 198 at 8. The Court's assessment of the §3553 factors leads the same conclusion. Defendant's lengthy and extensive criminal history is worth setting out here when considering these factors.

- First federal drug trafficking conviction in 1989 at the age 24 for possessing with the intent to distribute 100 grams of a mixture and substance containing methamphetamine in 89-cr-132, and served five years in custody. Presentence Report ("PSR"), Doc. 125 at ¶44.

- Soon after her release, on December 18, 1995, a petition to revoke Defendant's supervised release was filed alleging that she was arrested on new drug charges. *Id.*

- In 1997, Defendant was arrested twice for receiving and transferring a stolen motor vehicle. *Id.* at ¶ 51–52.

- In 1998, she was arrested for conspiracy, possession of burglary tools, tampering with evidence, and receiving stolen property. *Id.* at 53. In 1998 the defendant was convicted in the Second Judicial District Court of New Mexico for the felony offenses of Fraud and Forgery and served a term of incarceration and probation before fleeing in 2004. *Id.* at ¶ 45. Defendant remained on the run for ten years until she was arrested on August 12, 2014. *Id.*

- Within the year, Defendant was moving pounds of methamphetamine in the current case. In June of 2015, Ms. Cook was arrested for the charges proven in Count 1 of the Superseding Indictment. *Id*. at ¶ 3. Among the items found were approximately 6.5 pounds of methamphetamine, $17,307 in cash, Defendant's driver's license, her social security card, and various other drugs. *Id.* at 9. She confessed to possessing approximately 6.5 pounds of methamphetamine with the intent to distribute, and to supplying her co-defendant, Marti Solano, with methamphetamine. *Id.* at 10.

- The defendant was indicted federally on September 10, 2015, and her attorney was unable to reach the defendant to turn herself in. PSR at ¶ 11. Subsequent investigation revealed that the defendant had crossed the border on August 10, 2016 at the port of entry in Nogales, Arizona using another woman's birth certificate. *Id.* at 12. She was with co-defendant and boyfriend Jeffrey Burlingame. Doc. 155 at 83. On October 7, 2015, agents advised Burlingame that Defendant was wanted. PSR at ¶13.

- On February 24, 2016, an agent executed a search warrant at the Habanero residence after observing Burlingame enter the residence with a bag. *Id.* at ¶ 14. Inside, agents found Ms. Cook with yet another pound of methamphetamine, the same driver's license from the Alcazar house, and the birth certificate the defendant used to cross the border on August 10, 2016. *Id.*at 16. Also recovered from the residence were books entitled "How to Disappear: Erase Your Digital Footprint," and "How to Disappear Completely and Never Be Found." *Id.* at 18.

Defendant claims that she has never denied her addiction in the past and is now on medication for her mental health issues which has proven to be effective, given her completion of a re-entry program and her volunteer services at the facility. Ms. Cook describes the Government's response as "nonsense" and "character assassinations." Doc. 203 at 3. She objects to the Government's use of the phrase "on the run" to describe her actions during the ten years prior to her 2014 arrest, but her indignation is misplaced and sorely contradicted by evidence of her subsequent behavior in avoiding arrest—such as her crossing the Mexican border with her

boyfriend and her choice of reading material prior to her most recent arrest and conviction.[2] Thus even now, Defendant seems to be in denial about her role in the offense which has caused her to be serving her 324-month sentence. *See* Doc. 140 (Judgment) at 3.

The Court empathizes with the situation in which Defendant now finds herself regarding her mother's decline, but this turn of events does not warrant Defendant's release. Ms. Cook has thus far served barely 5 years of a 27-year sentence, and the Court is not persuaded that this period approaches a point that is either adequate for future deterrence or that reflects the seriousness of her criminal conduct. The Court is, however, reasonably certain that Defendant's release would not protect the public from further crimes Ms. Cook may commit if she is released now. Accordingly, for all the foregoing reasons, the Court declines to grant the relief she seeks.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Emergency Motion for Release Bond and for Compassionate Release **(Doc. 195)** is hereby DENIED.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] In its response, the Government refers to evidence admitted at trial. The Tenth Circuit noted in its decision denying Ms. Cook's appeal that " . . . the jury watched a video of Cook recrossing the Mexican border" using the "same false identification documents for "Lara Baca" found at both searches." Doc. 165-1 at 16. The books mentioned by the Government in its response were items discovered in the living room at the Habanero Way search. *Id*. at 16.