IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDRA COOK,

     Petitioner,

v.                                              1:20-CV-00369-WJ-LF
                                              1:15-CR-03224-WJ-LF-1

UNITED STATES OF AMERICA,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Sandra Cook's pro se Motion to Vacate under 28 U.S.C. § 2255, filed on April 22, 2020.  Doc. 1. On April 24, 2020, Ms. Cook filed an Amended Motion to Vacate under 28 U.S.C. § 2255. Doc. 3. The United States filed its response on October 5, 2022, and Ms. Cook filed her reply on February 6, 2023. Docs. 50, 55. The Honorable Chief District Judge William Johnson referred this case to me to pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 32. Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Ms. Cook's motion.

## I.   Background Facts[1] and Procedural Posture

On June 30, 2015, Bernalillo County Sheriff's Department (BCSD) deputies executed a search warrant on a house on Alcazar Street in Albuquerque (the "Alcazar house") seeking a

---

[1] Although the factual summary is taken from the Tenth Circuit's decision affirming Ms. Cook's conviction, this PF&RD refers to the criminal docket in Case No. 1:15-cr-03224-WJ-LF as necessary to support the facts critical to the Court's recommended disposition.

woman named Marti Solano, who was suspected of dealing large amounts of methamphetamine. *United States v. Cook*, 761 F. App'x 840, 841 (10th Cir. 2019). As BCSD deputies approached the house, they encountered Jeffrey Burlingame, Sandra Cook's fiancé. *Id.* Burlingame said he did not have a key to the house, so one of the deputies rang the doorbell. *Id.* at 842–43. Ms. Cook answered the door, and told the deputies that Solano was in the basement. *Id.* at 842. One of the deputies, Detective Jerry Koppman, went downstairs and encouraged Solano to cooperate with BCSD's investigation. *Id.* After initially hesitating, Solano identified Ms. Cook as her methamphetamine supplier. *Id.*

Detective Koppman went back upstairs and confronted Ms. Cook. *Id.* Ms. Cook feigned ignorance of Solano's claim. *Id.* But when deputies searched a red purse Ms. Cook was carrying, they found a usable amount of methamphetamine and several bundles of cash. *Id.* Upon searching the southeast upstairs bedroom, adjacent to the bedroom where Ms. Cook resided, detectives found, *inter alia*, over six pounds of methamphetamine, more than $20,000 dollars in cash, and Ms. Cook's driver's license and Social Security card. *Id.* This bedroom did not have a bed in it; it appeared to be a home office and storage area. *Id.* The deputies believed this room belonged to Ms. Cook because of its proximity to Ms. Cook's bedroom, it was neat and tidy like her bedroom and unlike Solano's basement bedroom, and it also contained several handbags similar to the one Ms. Cook was carrying. *Id.* In addition, a few days after the search, Ms. Cook asked the landlord to remove Solano's things from the basement bedroom because Ms. Cook did not have access to that locked room. *Id.* at 842 n.3. This further suggested that Ms. Cook controlled the two upstairs bedrooms and Solano controlled only the basement bedroom. *Id.*

Shortly after her arrest and booking, Ms. Cook asked to talk with Detective Koppman and, according to his testimony, Ms. Cook admitted that she worked as a distributor for the

Sinaloa Cartel in Mexico. *Id.* at 843. Although Ms. Cook did not testify at trial, she denied making this statement on appeal. *Id.* Sergeant Brad Cooksey was in the room when the conversation between Detective Koppman and Ms. Cook took place. *Id.* He testified that he was not paying close attention, but he heard Ms. Cook telling Detective Koppman about a source of supply in Phoenix, and that she would be willing to help BCSD get that target. *Id.*

Ms. Cook was released on bond and worked for a while as an informant before she "flak[ed] out" and stopped responding to Detective Koppman's calls. *Id.* At this point, BCSD turned the case over to federal agents at Homeland Security Investigations (HSI) and the United States Attorney's Office, who obtained an indictment and arrest warrant for Ms. Cook based on the evidence found at her home on June 30, 2015. *Id.*; *see also* Cr. Docs. 1–3.[2]

HSI agents obtained information that Burlingame and Ms. Cook entered the United States from Mexico, and that Ms. Cook used a birth certificate with the name Lara Baca to do so. *See Cook*, 761 F. App'x at 843. Ms. Cook's entry was captured on videotape at a pedestrian crossing in Nogales, Arizona. *Id.* HSI also learned that Ms. Cook was staying at a house on Habanero Way (the "Habanero house") in Albuquerque, and they obtained and executed a search warrant there. *Id.* At that house, federal agents found Ms. Cook and Burlingame inside near a table with methamphetamine residue and drug paraphernalia spread out on it. *Id.* They also found a bag that contained "about a pound of methamphetamine, a birth certificate and two photo identification cards for Lara Baca, and Ms. Cook's New Mexico driver's license." *Id.* at 843–44. Ms. Cook was standing two to three feet from this bag. *Id.* at 844. In Burlingame's backpack, the agents found a loaded pistol and ammunition. *Id.* at 844. Ms. Cook was arrested and charged with a second count of possession with intent to distribute 50 grams and more of methamphetamine

---

[2] Citations to "Cr. Doc." refer to the docket in the criminal case, Case No. 1:15-cr-03224-WJ-LF.

based on the drugs found at the Habanero house. *See* Cr. Docs. 75, 76. Ms. Cook went to trial,[3]

and on May 10, 2017, a jury found her guilty on both counts of possession with intent to

distribute methamphetamine. Cr. Doc. 122.

At sentencing, the district judge applied several sentencing enhancements, including one

for Ms. Cook's role as a manager or supervisor of a criminal activity and another for possession

of a firearm as part of that activity. Cr. Doc. 157 at 8–12, 15–24. The Court also granted a

downward variance of two levels. *Id.* at 41. On September 11, 2017, the district judge sentenced

Ms. Cook to 324 months in prison on each count, to run concurrently, followed by five years of

supervised release. Cr. Doc. 140. The Court entered the judgment reflecting this sentence on

September 21, 2017. *See id.*

On September 22, 2017, Ms. Cook filed a direct appeal to the Tenth Circuit. Cr. Doc.

141. Ms. Cook challenged the district court's exclusion of certain evidence at trial. *Cook*, 761 F.

App'x at 846; *see also* Doc. 3 at 12. On January 25, 2019, the Tenth Circuit affirmed the district

court's evidentiary rulings and affirmed the judgment. *Id.* at 851. Ms. Cook did not file a petition

for writ of certiorari in the Supreme Court so her judgment became final 90 days later, on April

25, 2019. *See United States v. Harrison*, 680 F. App'x 678, 679–80 (10th Cir. 2017)

(unpublished) (explaining the calculation of the date a judgment becomes final). Ms. Cook

timely filed her Motion to Vacate on April 22, 2020, and her amended motion on April 24, 2020.

*See* Docs. 1, 3.

---

[3] Jeffrey Burlingame was charged separately. *See United States v. Burlingame*, Case No. 1:16-cr-01088-JCH. He pled guilty and was sentenced to 84 months in prison. *Id.*, Doc. 67.

## II.   Ms. Cook's Claims

Although Ms. Cook raises three "claims" in her petition, these claims contain multiple and sometimes interrelated arguments. Because Ms. Cook is proceeding pro se, the Court construes her pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). I understand Ms. Cook to argue ineffective assistance of counsel under the following theories:[4]

1.  Trial counsel did not point out to the jury alleged evidentiary inconsistencies regarding the discovery of Ms. Cook's driver's license and Social Security card in the same bedroom where large quantities of methamphetamine were found and did not move for suppression of evidence and testimony based on these inconsistencies. Doc. 3 ¶¶ 25–38, 49.

2.  Appellate counsel should have argued that Detective Koppman's testimony was insufficient to support a three-level enhancement for Ms. Cook's role in the offense. *Id*. ¶¶ 41, 43–45, 47.

3.  Appellate counsel should have argued that the two-level firearm enhancement was based on an improper application of the presumption that the firearm was reasonably foreseeable. *Id.* ¶¶ 42–44, 46–47.

4.  Trial counsel should have independently tested the methamphetamine admitted into evidence, and also challenged the validity of the government's tests by cross-examination on the protocol, calibration, and results of the tests. *Id*. ¶¶ 51, 55.

---

[4] Ms. Cook makes several additional claims that the Court does not address. These claims are vague and unsupported by specific factual allegations, and the Court will not consider them. *See* Doc. 3 ¶¶ 50, 56–59, 61. Additionally, although Ms. Cook attempts in her reply to broaden some claims to include appellate counsel as well as trial counsel, Doc. 55 at 4, the Court will not consider claims made for the first time in a reply, *see United States v. Patterson*, 525 F. App'x 681, 683 (10th Cir. 2013).

5. Trial counsel should have argued that Ms. Cook's sentence was improperly computed because the counts of her conviction were grouped together from the beginning, rather than separately determining the offense level for each count. *Id.* ¶ 52.

6. Trial counsel should have argued that the sentencing court should vary downward from the sentencing guideline range because the disparity in the guideline range for mixtures of methamphetamine as opposed to pure methamphetamine is not supported by empirical data. *Id.* ¶ 53.

7. Trial counsel should have timely objected to the prosecutor's statement to the jury that "additional evidence which had not been presented, was available for use against Ms. Cook." *Id.* ¶ 54.

8. Trial counsel should have objected to Detective Koppman's testimony at sentencing that Ms. Cook was "very connected" to the Sinaloa Cartel. *Id.* ¶ 60.

For the reasons explained below, none of these claims have merit. I therefore recommend that the Court deny Ms. Cook's motion.

## III.    Standard of Review

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). The standard applied to § 2255 motions is stringent: only violations of federal law that "constitute[] a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" justify relief. *United States v. Gordon*, 172 F.3d 753, 755 (10th Cir. 1999) (quoting *United States v.*

*Talk*, 158 F.3d 1064, 1069 (10th Cir. 1998)) (internal quotation marks and brackets omitted). The

Court presumes the proceedings that led to a defendant's conviction were correct. *Parke v.

Raley*, 506 U.S. 20, 29–30 (1992).

The Sixth Amendment of the U.S. Constitution guarantees the right to effective

assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). For Ms. Cook

to succeed on her claims of ineffective assistance, she must demonstrate both that (1) "counsel's

representation fell below an objective standard of reasonableness," and (2) "the deficient

performance prejudiced the defense." *Id.* at 687–88. To show that counsel's representation was

objectively unreasonable, Ms. Cook must demonstrate "that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Id*. at 687. This is a heavy burden: "[c]ounsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment," *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011), and was

"entitled to formulate a strategy that was reasonable at the time and to balance limited resources

in accord with effective trial tactics and strategies," *Harrington v. Richter*, 562 U.S. 86, 107

(2011).

To show prejudice, Ms. Cook must demonstrate "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland,* 466 U.S. at 694. A court "may address the performance and prejudice components in

any order, but need not address both if [the defendant] fails to make a sufficient showing of one."

*Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998). Where Ms. Cook claims that her

counsel was ineffective by failing to raise an issue on appeal, the merits of the omitted issue

substantially determine the probability that the appeal would have been successful had the issue been raised and, consequently, also determine whether counsel was unreasonable to omit the issue. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003); *Wood v. Carpenter*, 907 F.3d 1279, 1304 (10th Cir. 2018).

## IV.   Analysis

### A.  Sentencing Enhancements

The length of Ms. Cook's sentence reflects, in part, two enhancements applied at her sentencing hearing: a three-level enhancement for Ms. Cook's role as a manager or supervisor of a criminal activity and a two-level enhancement for the possession of a firearm during that activity. *See* Cr. Doc. 157 at 8–12, 15–24. Ms. Cook's appellate counsel did not challenge either enhancement on appeal. Ms. Cook brings an ineffective assistance of counsel claim based on each omission. Doc. 3 ¶¶ 41–47. Because these claims concern counsel's omission of an issue on appeal, I look to the merits of each underlying issue to determine both whether counsel's omission of that issue was unreasonable and whether the omission prejudiced Ms. Cook. *See Cargle*, 317 F.3d at 1202.

When reviewing the merits of a challenge to a sentencing enhancement, an appellate court reviews "factual findings of the district court under the clearly erroneous standard . . . and review[s] de novo questions of law in applying the Guidelines." *United States v. Gomez-Arrellano*, 5 F.3d 464, 465 (10th Cir. 1993) (citations omitted). This Court must do the same. A court reviewing for clear error may reverse only if "convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. Nkome*,

8

987 F.3d 1262, 1277 (10th Cir. 2021) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

### 1. Ms. Cook fails to show that her appellate counsel was ineffective by omitting arguments related to the three-level aggravating role sentencing enhancement.

Ms. Cook received a three-level aggravating role enhancement as "a manager or supervisor" of a criminal activity that "involved five or more participants or was otherwise extensive . . . ." USSG § 3B1.1(b)[5]; Cr. Doc. 157 at 15–24. She complains twice about her appellate counsel's omission of any argument regarding this enhancement. First, she complains that:

> counsel could have but did not argue . . . that when sentencing counsel objected to the 3 points enhancement . . . the witness, Koppman, did not come up with adequate evidence. Koppman merely named individuals that his confidential informants had named who were alleged to be "participants." Koppman did not further support those names with any kind of evidence. Koppman did not identify anyone at all "controlled" by Ms. Cook what-so-ever and the district court didn't name anyone as "controlled" either but made its finding based solely on the number of "participants."

Doc. 3 at 16–17. Later, she argues that this omission caused prejudice:

> Ms. Cook was prejudiced by appellate counsel's acts and omission in failing to challenge the role in the offense enhancement because the government failed to come forward with sufficient, competent evidence that Ms. Cook . . . "manage[d], or supervise[d]" any participants. This was both a violation of Due Process of Law under *United States v. Helding*, 948 F.3d 864 (7th Cir. 2020) and a violation of the requirements of *United States v. Londono*, [145 F.3d 1347 (Table); 1998 WL 174890 (10th Cir. 1998)] and cases therein which require a finding that the defendant actually "organize[d], led[], manage[d], or supervis[ed]" one participant before the court can apply the "otherwise extensive" clause of the Guideline. This was a "dead bang winner" just as in the Londono case and undermines confidence in the enhancement to Ms. Cook's sentence for "role in the offense." But for appellate counsel's unprofessional errors, there is a reasonable probability that the Court of Appeals would have vacated Ms. Cook's 3 points enhancement for role in the offense.

---

[5] The 2016 Guidelines Manual was used to determine Ms. Cook's advisory guideline range. Cr. Doc. 125 ¶ 30. All citations to the Guidelines Manual are to the 2016 version unless otherwise noted.

*Id.* at 18.

I understand Ms. Cook's pro se motion to state two separate ineffective assistance claims, each predicated on the omission of a different underlying issue related to the three-level enhancement. First, Ms. Cook complains that her counsel did not argue that the district court erred by applying the three-level enhancement to her sentence despite insufficient evidence. She argues that the evidence was insufficient (1) because the list of participants was based on hearsay statements by confidential informants and not corroborated by other evidence and (2) because no evidence showed her control over any participant. Neither contention has merit. Therefore, counsel was not ineffective by choosing to omit this issue. Second, Ms. Cook complains that her counsel did not argue that the district erred by failing to articulate its finding that she managed or supervised at least one participant. Although this issue may have merit, I nonetheless find that counsel was not ineffective by omitting it.

Application of an aggravating role sentencing enhancement under USSG § 3B1.1 "presents a mixed question of law and fact that is subject to the clearly erroneous standard of review." *United States v. Patton*, 927 F.3d 1087 (10th Cir. 2019) (citing *United States v. Marquez*, 833 F.3d 1217, 1223 (10th Cir. 2016)). Detective Koppman's testimony furnished evidence that plausibly supports the sentencing court's findings that Ms. Cook was a manager or supervisor of a criminal activity with five or more participants. Therefore, the sentencing court did not commit clear error.

Application of a three-level aggravating role enhancement requires the sentencing court to find that five or more individuals, including the defendant, *United States v. Robertson*, 45 F.3d 1423, 1448 (10th Cir. 1995), were "criminally responsible for the commission of the offense" for which the defendant has been convicted. USSG § 3B1.1(b) & comment. (n.1). The sentencing court in this case found—based on Detective Koppman's testimony at the sentencing hearing—

that nine individuals were involved with Ms. Cook's distribution of methamphetamine. *See* Cr. Doc. 157 at 17–20, 23–24. The criminal responsibility of two of these participants, Marti Solano and Jeff Burlingame, was established at trial. The responsibility of the other seven was, as Ms. Cook complains, based on hearsay statements by Detective Koppman's confidential informants. *See* Doc. 3 at 16–17; Cr. Doc. 157 at 17–20.

When sentencing a defendant, "courts may consider any information that contains 'sufficient indicia of reliability to support its probable accuracy,'" including hearsay and even double hearsay. *United States v. Pulham*, 735 F. App'x 937, 951 (10th Cir. 2018) (unpublished) (quoting USSG § 6A1.3(a)). "Corroborating evidence is often key to determining whether a statement is sufficiently reliable." *Id.* (citation omitted). Of the hearsay statements relayed by Detective Koppman, at least four—of a necessary two—are sufficiently corroborated to "bear some minimal indicia of reliability." *Id.* (quotation omitted). Detective Koppman testified that "[m]ultiple sources stated that [Edward Kriglestein] worked for Ms. Cook." Cr. Doc. 157 at 20. Further, the DEA "took down Edward Kriglestein, and he was found with a large amount of methamphetamine in his possession." *Id.* Another source reported that when he called Ms. Cook for methamphetamine, usually she would bring it to him, but sometimes Kriglestein would come instead of Ms. Cook. *Id.*

Likewise, Detective Koppman had heard from others that George Martinez was "picking up from [Ms. Cook]," a fact corroborated by Mr. Martinez' confession to the same and his residence across the street from Ms. Cook. *Id.* at 19. Martinez gave Detective Koppman a couple of ounces of methamphetamine that he said he had received from Ms. Cook the day BCSD executed the warrant on the Alcazar house. *Id.* Several sources also told Detective Koppman that Melanie Brunson was a runner for Ms. Cook, and that she would go to Arizona to pick up

11

methamphetamine for her. *Id.* Brunson admitted to Detective Koppman that she was a runner. *Id.* Finally, Thomas Harris' work for Ms. Cook, including renting an apartment where she was found with methamphetamine, appears to be corroborated by rental records in his name.[6] *Id.* at 20. Detective Koppman's testimony supports the sentencing court's finding that five or more participants were involved in this criminal activity. This finding was not clear error, and this issue would have had no merit on appeal. Therefore, Ms. Cook's counsel was not ineffective for omitting it. *See Cargle*, 317 F.3d at 1202.

To apply the enhancement, the sentencing court also must find that the defendant managed or supervised at least one participant. USSG § 3B1.1(b). A manager or supervisor "exercises some degree of decision-making authority, control, or organizational authority over a [single] subordinate participant in the offense." *United States v. Hunsaker*, 65 F.4th 1223, 1229 (10th Cir. 2023); *see also United States v. Lozano*, 921 F.3d 942, 948 (10th Cir. 2019) (A defendant "need only manage or supervise *one* of [her] co-conspirators to qualify for the three-level enhancement."); USSG § 3B1.1, comment. (n.2). "[T]he term 'supervisor' [is] satisfied upon a showing that the defendant exercised any degree of direction or control over someone subordinate to [her]." *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir. 1990) (emphasis added). Where the criminal activity involves the sale of illegal drugs, the Tenth Circuit has "identified several factors which might indicate that a defendant exercised the requisite control over others, including that: other sellers worked for [her], were recruited by [her]," were

---

[6] Detective Koppman also testified that Harris "believed that [Ms. Cook] was up to something, possibly selling narcotics." Harris' suspicions are likely enough to render him "criminally responsible." USSG § 3B1.1, comment. (n.1); *see United States v. Cortez-Diaz*, 565 F. App'x 741, 750 (10th Cir. 2014) (knowing involvement "meets the standard for criminal responsibility as a participant."). However, because the district court did not clearly err even if Harris was not a participant, it is unnecessary to definitively resolve this issue.

restricted by her in the people to which they could sell or the price or manner of their sales, or yielded a larger share of their proceeds to her. *United States v. Sallis*, 533 F.3d 1218, 1223 (10th Cir. 2008) (citing *United States v. Anderson*, 189 F.3d 1201, 1212 (10th Cir.1999)). A defendant need not meet all of these factors to qualify for the enhancement. *Id.* at 1224.

Despite Ms. Cook's allegations to the contrary, Detective Koppman's testimony showed that Ms. Cook managed or supervised at least one participant. Detective Koppman testified that Melanie Brunson worked as a runner for Ms. Cook, traveling to "Arizona or close to Arizona to pick up methamphetamine," Cr. Doc. 157 at 19, that Edward Kriglestein would sometimes bring methamphetamine to a distributor on behalf of Ms. Cook, *id.* at 20, and that Thomas Harris rented storage units and an apartment for Ms. Cook. *Id.* He does not single out any individual as being managed or supervised by Ms. Cook, but his testimony certainly supports a reasonable inference that she exercised control over several participants.

The presentence report is more explicit. According to the report, Ms. Cook "was entrusted with large amounts of methamphetamine from her contacts in the cartel" which she supplied to "at least six distributors in the Albuquerque area." Cr. Doc. 125 at 22; *see also* Cr. Doc. 132 at 3. She "maintained some managerial oversight of her organization of distributors. She made decisions about who could receive her supply and cut off supply to those who did not maintain certain standards" and "was keeping money tabulations on several of her distributors." Cr. Doc. 125 ¶ 26 & at 22. She also "maintained supervision of [Marti Solano,] who was selling out of [Ms. Cook's] residence," and lived across the street from another distributor, George Martinez, presumably for supervisory reasons. *Id.* Given this evidence, it was not clear error for the district court to find that Ms. Cook managed or supervised at least one participant. This issue would have had no merit on appeal and Ms. Cook's counsel was not ineffective by omitting it.

13

Ms. Cook is correct that the sentencing court failed to articulate its finding that she managed or supervised at least one participant. However, Ms. Cook's trial counsel did not object to the Court's explanation. Because Ms. Cook's counsel did not register a contemporaneous objection to the sentencing court's explanation, the Court, in considering the merits, must review the sentencing court's explanation for plain error. *See United States v. Uscanga-Mora*, 562 F.3d 1289, 1293 (10th Cir. 2009); *United States v. Gehrmann*, 966 F.3d 1074, 1081 (10th Cir. 2020). "To merit relief under [this] standard, [Ms. Cook] must establish (1) error, (2) that is plain, which (3) affects [her] substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gehrmann*, 966 F.3d at 1081 (quotation omitted).

When ruling on the application of an enhancement under USSG § 3B1.1, a district court "must find and articulate sufficient facts and reasons to allow [review of] the appropriateness of the enhancement . . . ." *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1112 (10th Cir. 2008); *see also Uscanga-Mora*, 562 F.3d at 1293. "Failure to provide proper explanation for the chosen sentence is reversible procedural error." *Pena-Hermosillo*, 522 F.3d at 1112. Though the sentencing court in this case found that Ms. Cook was a manager or supervisor, it did not articulate any reasoning that supported this finding. *See* Cr. Doc. 157 at 676–78. This is error that is plain.

However, "[t]o show that an error affected [her] substantial rights, [Ms. Cook] must establish 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Uscanga-Mora*, 562 F.3d at 1295 (quoting *United States v. Cook*, 550 F.3d 1292, 1298 (10th Cir. 2008)). Ms. Cook provides no argument on this issue. Given the evidence of Ms. Cook's control over multiple participants, there is no meaningful probability that the sentencing court would have found differently had it articulated its finding on this issue.

Ms. Cook "thus received a sentence merited by the evidence," and the sentencing court did not commit plain error. *Id.* Ms. Cook's appellate counsel was not ineffective by omitting this and other issues related to the aggravating role enhancement. I recommend that the Court deny her request for relief on this issue.

### 2. Ms. Cook fails to show that her appellate counsel was ineffective by omitting arguments related to the two-level sentencing enhancement for possession of a firearm.

As above, the Court must look to the merits of the omitted issue. *Cargle,* 317 F.3d at 1202. Reviewing the sentencing court's finding for clear error, the sentencing court did not err in finding that Ms. Cook reasonably could have foreseen her partner's possession of a firearm. *See United States v. McFarlane*, 933 F.2d 898 (10th Cir. 1991) (finding concerning foreseeability reviewed for clear error). Accordingly, because this issue would have no merit on appeal, Ms. Cook's counsel was not ineffective for omitting it.

A sentencing court may apply a two-level enhancement under USSG § 2D1.1(b)(1) "if a dangerous weapon (including a firearm) was possessed" during a drug trafficking offense. The government must show possession by a preponderance of the evidence; it meets this burden "when it shows that a weapon was located near the general location where at least part of a drug transaction occurred." *United States v. Foy*, 641 F.3d 455, 470 (10th Cir. 2011). Once possession is shown, the defendant bears the burden of showing that it is clearly improbable that the weapon was connected with the offense. *Id.*

In her petition, Ms. Cook emphasizes that the relevant firearm was in Mr. Burlingame's possession and that he "accepted full responsibility" for it. Doc 3. ¶¶ 42, 46. This is of no import. "The enhancement applies when a co-defendant possessed a firearm, so long as possession was reasonably foreseeable to the defendant," "unless it is clearly improbable that the weapon was

connected with the offense."[7] *United States v. Foy*, 641 F.3d 455, 470 (10th Cir. 2011) (citing *United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir.1991)); USSG § 2D1.1, comment. (n.3). Although Ms. Cook and Mr. Burlingame were not charged with conspiracy to distribute, the sentencing court had ample evidence that linked Mr. Burlingame to the offenses for which Ms. Cook was convicted. *See* Cr. Doc. 157 at 10–12. Mr. Burlingame's possession of a firearm was therefore adequate to support the application of this enhancement to Ms. Cook. *See generally United States v. Morales*, 232 F. App'x 800 (10th Cir. 2007) (upholding the application of a firearm enhancement based on firearms owned by the appellant's brother, who was charged separately); *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006) (sentencing court may consider uncharged conduct).

Ms. Cook also argues that her appellate counsel "could have but did not argue that the district court unreasonably and overbroadly applied a 'presumption' that in certain cases it is reasonably foreseeable to defendants that other members involved in the offense will carry firearms." Doc. 3 at 20. She does not provide substantive argument on this point. The sentencing court did not err by inferring, based on the "large amount" of methamphetamine present in the residence where Mr. Burlingame possessed a firearm, that the firearm was reasonably foreseeable to Ms. Cook. *United States v. McKissick*, 204 F.3d 1282, 1293 (10th Cir.2000); *see also* Cr. Doc. 157 at 11–12; *United States v. Moreira*, 333 F. App'x 366, 371–72 (10th Cir.

---

[7] At sentencing, Ms. Cook objected to the application of the firearm enhancement but did not produce any evidence suggesting that it was clearly improbable that Mr. Burlingame's weapon was unconnected to their methamphetamine trafficking. *See* Cr. Doc. 157 at 8–12. She "denied that she knew that Mr. Burlingame had brought a gun into the residence [and] had no personal attachment to [the gun], no possession of it, and fe[lt] that an enhancement" was inappropriate, *id.* at 8–9, but provided no further evidence or argument regarding clear improbability. This lack of "subjective knowledge . . . is insufficient to meet her burden of 'clear improbability.'" *United States v. Temple*, 433 F. App'x 630, 635 (10th Cir. 2011) (unpublished).

2009) (not clearly erroneous to find firearms reasonably foreseeable given large amount of drugs in house) (citing *United States v. Wade*, 318 F.3d 698, 702 (6th Cir.2003)); *United States v. Williams*, 31 F.3d 522, 526 (7th Cir. 1994) ("[T]he presence of firearms in transactions involving sizeable quantities of drugs is reasonably foreseeable."). There is no basis to find that the sentencing court's application of this enhancement was clearly erroneous, and therefore no basis to find that Ms. Cook's counsel was ineffective by omitting this issue on appeal. I recommend that the Court deny her request for relief on this ground.

### B. Ms. Cook's remaining six claims for relief do not have merit.

Six of Ms. Cook's remaining arguments are stated with sufficient specificity to be considered by the Court. However, none make a plausible case that her trial counsel "made errors so serious that [he was] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Ms. Cook complains that her trial counsel did not point out to the jury alleged evidentiary inconsistencies regarding the discovery of Ms. Cook's driver's license and Social Security card in the same bedroom where large quantities of methamphetamine were found and did not move for suppression of evidence and testimony based on these inconsistencies. Doc. 3 ¶¶ 25–38, 49; Doc. 55 at 17–18. Of all her claims, Ms. Cook provides the most substantive evidence related to this one, including date and time stamps for the images taken in the Alcazar house, Doc. 55 at 6–7, Ms. Cook's reconstruction of the order in which the photos were taken, *id.* at 9, and annotated reproductions of the photos, *id.* at 12–15. However, this evidence is of questionable import and, especially given the overwhelming evidence arrayed against her, Ms. Cook has not met her burden of showing "that the decision reached would reasonably likely have been different" had this evidence been presented. *See Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only

weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."); *United States v. Davis*, 149 F.3d 1192 (10th Cir. 1998) (unpublished). Therefore, Ms. Cook has not shown that her counsel's failure to point out this evidence to the jury prejudiced the defense. *See Strickland*, 466 U.S. at 687.

Next, Ms. Cook complains that trial counsel should have challenged the tests performed on the seized methamphetamine, including through independent testing and cross-examination about the protocol, calibration, and results of the tests.[8] Doc. 3 ¶¶ 51, 55. There is no merit to this complaint. At trial, the prosecution called four experts, each of whom had performed separate tests on the methamphetamine in question and testified to their qualifications and the testing protocols, including calibration. *See* Cr. Doc. 155 at 175–223, Cr. Doc. 156 at 3–22. Three of these experts testified that their testing had found the methamphetamine to be nearly 100-percent pure. *See* Cr. Doc. 155 at 192, 218; Cr. Doc. 156 at 14. The final expert testified that the methamphetamine sample she had tested was 82.8 percent pure, a purity that was reflected in Ms. Cook's sentencing calculation. *See* Cr. Doc. 155 at 206; Cr. Doc. 132 at 1. Given this wealth of testing and relevant testimony, it was not objectively unreasonable for Ms. Cook's counsel to decide not to expend resources and time attempting to challenge this evidence. *See Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

---

[8] In these paragraphs, Ms. Cook also complains that "[c]ounsel . . . did not argue that attribution to her of all methamphetamine but that found in Marti Solano's room was not supported by the preponderance of the evidence because it was based solely on" Marti Solano's statement and evidence that Ms. Cook's identification cards were found with the methamphetamine, but makes no specific allegations as to which quantities of methamphetamine should not have been attributed to her, or why. Doc. 3 ¶¶ 51, 55. If Ms. Cook hopes to argue that *none* of the methamphetamine in the Alcazar house should have been attributed to her, a § 2255 petition does not allow her to relitigate the jury's verdict on Count 1 of her conviction. *See United States v. Marcello*, 436 F.2d 1221, 1225 (5th Cir. 1971).

Ms. Cook then complains that her trial counsel should have argued that her sentence was improperly computed because "the Sentencing Guidelines state that when a defendant is convicted of multiple counts, the sentencing court is obliged to separately determine the offense level for each count." Doc. 3 ¶ 52. However, Ms. Cook's sentence was calculated properly; according to USSG § 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group," including when "the offense level is determined largely on the basis of . . . the quantity of a substance involved." This provision expressly covers USSG § 2D1.1, the guideline applicable to 21 U.S.C. § 841(b)(1)(A), under which Ms. Cook was convicted. USSG § 3D1.2(d); *see also* Cr. Doc. 140 at 1–2. Ms. Cook also complains that her trial counsel should have argued that the sentencing court should make a downward variance because the disparity in sentencing guidelines between mixtures of methamphetamine and pure methamphetamine is not supported by empirical data. Doc. 3 ¶ 53. However, a downward variance *was* made at sentencing, implicitly on the basis that the methamphetamine in this case would be treated as a mixture rather than pure. *See* Cr. Doc. 157 at 28–29, 41. Therefore, neither of these complaints have merit.

Finally, Ms. Cook complains that her trial counsel should have objected to two potentially prejudicial statements: the prosecutor's statement to the jury that "additional evidence which had not been presented, was available for use against Ms. Cook," and Detective Koppman's testimony at sentencing that Ms. Cook was "very connected" to the Sinaloa Cartel. Doc. 3 ¶¶ 54, 60. Regarding the former complaint, Ms. Cook argues that, had her counsel objected to the relevant statement, the court might have granted a mistrial. *Id.* ¶ 54. I understand Ms. Cook to refer to the following section of the prosecution's rebuttal closing argument:

You walk into the kitchen, cook[ie] jar is broken, cookies are gone, crumbs on the child's mouth and on the floor, and the child tells you they did it. You don't need DNA. You have enough.

This is what we talked about a couple of days ago in voir dire when I read you that long list of people that we might call, and I said, "Don't worry, we're not going to call all these people. Will any of you hold that against me if I don't present literally every piece of evidence, literally every piece of testimony?" And you all agreed that you wouldn't. You all agreed what was important is that if we present our case beyond a reasonable doubt, that you could convict.

The defense attorney, in the same breath, called this a halfway investigation and a case that's too good. . . .

Cr. Doc. 156 at 138.

The point of the prosecutor's statement was to point out that the evidence presented at trial was enough to prove Ms. Cook's guilt beyond a reasonable doubt; additional evidence was not necessary. This was a fair response to Ms. Cook's argument that the investigation of the case was shoddy. *See* Cr. Doc. 156 at 134. Given this and the fact that Ms. Cook's counsel unsuccessfully moved for a mistrial based on a similar statement in the same closing argument, *see id.* at 140–41, it was not objectively unreasonable for counsel not to object to this statement.

Likewise, it was not objectively unreasonable for counsel not to object to Detective Koppman's testimony at sentencing about Ms. Cook's connections to the Sinaloa cartel. Ms. Cook advances two grounds on which her counsel might have objected to this statement. Neither has merit. First, she argues that methamphetamine suppliers who purchase from the cartel are, like local stores who resell seeds from Walmart, merely buying at a low price from a bulk seller rather than "very connected" to the cartel. Doc. 3 ¶ 60. Next, she argues that although she confessed to Detective Koppman her connections to the Sinaloa cartel, this confession should be disregarded because "Koppman's lies are well documented" and because this confession was a ruse calculated to "get her released on bond" by establishing connections "to the biggest and most important figures possible." *Id.*

Setting aside the inconsistencies between these suggested grounds for objection, none is compelling. Most importantly, the sentencing judge already had heard Detective Koppman's trial testimony regarding Ms. Cook's confession and her assertion that she had connections to the Sinoloa Cartel. *See* Cr. Doc. 154 at 190. Detective Koppman's testimony about Ms. Cook's confession was corroborated by another officer, Sergeant Cooksey, who overheard some of the confession. *See* Cr. Doc. 155 at 66. Further, Ms. Cook's statement that she had connections to the Sinoloa cartel—whether mere boasting or true—was admissible at trial as a statement by a party opponent under FED. R. EVID. 801(d)(2)(A) and was not otherwise objectionable as unfairly prejudicial under FED. R. EVID. 403—it was *her* statement. Ms. Cook provides no reasonable ground for objecting to Detective Koppman's testimony at sentencing, and her counsel was not ineffective for failing to object.

None of Ms. Cook's complaints regarding her trial counsel show that his performance was deficient, or that any deficiency prejudiced her. The Court should deny Ms. Cook's motion in its entirety.

## C. An evidentiary hearing, further factual development, and representation are unnecessary.

Both Ms. Cook and the United States have moved for various forms of evidentiary development in this case. Because "the motion[s] and the files and records of the case conclusively show that [Ms. Cook] is entitled to no relief," these motions will be denied. 28 U.S.C § 2255(b).

Ms. Cook requests an evidentiary hearing where she can prove her allegations by "her own testimony" as well as the testimony of her trial counsel, the prosecutor, officers Brad Cooksey and Steven Cotton, the detective who searched the southeast bedroom of the Alcazar house, and the photographer who photographed the evidence obtained there. Doc. 3 ¶ 65. She

further requests an order requiring these witnesses to be deposed, and particularly to allow her to question her trial counsel "as to the reasons for his failures complained of herein," and an order requiring production of "the visitor logs for the Sandoval County Detention Center." *Id.* ¶¶ 67A, 67B. Because the record conclusively shows that Ms. Cook is not entitled to relief, and because Ms. Cook has not provided the Court with a "firm idea of what the testimony will encompass and how it will support [her] claims" or what "disputed factual issue" it will address, the Court denies these requests. *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012); *United States v. Gallegos*, 459 F. App'x 714, 717 (10th Cir. 2012). The Court also denies Ms. Cook's request that counsel be appointed to represent her during any evidentiary hearings and discovery. *See* Doc. 3 ¶ 69.

The United States filed two motions requesting evidentiary development: one seeking an affidavit from Ms. Cook's appellate counsel that would establish whether counsel and Ms. Cook discussed the omitted claims on which Ms. Cook's petition is partially based, and another requesting that the Court unseal part of the transcript from Ms. Cook's sentencing hearing. Docs. 39, 42. Because this information is not necessary to resolve Ms. Cook's petition, I deny both motions.

## V.   Recommendation

Ms. Cook fails to show that her trial or appellate counsel were ineffective. I therefore recommend that the Court deny Ms. Cook's Amended Motion to Vacate under 28 U.S.C. § 2255 (Doc. 3) and dismiss this case with prejudice. Because the case records show conclusively that Ms. Cook is not entitled to relief, no hearing is necessary. *See* 28 U.S.C § 2255(b).

## VI.    Certificate of Appealability

Lastly, I address whether Ms. Cook is entitled to a certificate of appealability. No appeal may be taken from a "final order in a proceeding under section 2255" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only if Ms. Cook "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, Ms. Cook has failed to make this showing. I therefore recommend that the Court deny Ms. Cook a certificate of appealability.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id.* In other words, if no objections are filed, no appellate review will be allowed.

---

Laura Fashing
United States Magistrate Judge